UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CHELSEA GRAND LLC,

          *Plaintiff*,

   -*against*-

NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

          *Defendant.*

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/2017

16 Civ. 05301 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Chelsea Grand LLC ("Chelsea") seeks an order vacating a 2016 arbitral award ("2016 Award") issued by the Office of the Impartial Chairperson ("OIC") in favor of the New York Hotel & Motel Trades Council, AFL-CIO (the "Hotel Workers Union"). Chelsea also seeks a declaratory judgment that it is not bound to any labor agreement with the Hotel Workers Union. The Hotel Workers Union cross petitions for confirmation of the 2016 Award and moves to dismiss Chelsea's declaratory judgment action.

    For the reasons set forth below, the Court denies Chelsea's petition to vacate the 2016 Award; grants the Hotel Workers Union's petition to confirm the 2016 Award; and grants the Hotel Workers Union's motion to dismiss the declaratory judgment action.

**BACKGROUND**

**I.    Prior Litigation and Relevant Agreements**

    In February 2003, Chelsea entered into a Hotel Management Agreement ("HMA") with

1

Interstate[1] for Interstate to act as the manager of Chelsea's hotel, the Four Points Hotel, located on West 25th Street in Manhattan. *Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, 07 Civ. 2614 (PAC), 2014 WL 4813028, at *3 (S.D.N.Y. Sept. 29, 2014) ("*Chelsea I*"). On January 15, 2004, Interstate entered into a Memorandum of Agreement with the Hotel Wokers Union ("2004 MOA"). *Id.* at *6. In it, Interstate "agree[d] to be bound by the Accretion and Card Count/Neutrality provisions of the Memorandum of Understanding dated June 15, 2000 between the Union and the Hotel Association of New York City Inc. [("2000 MOU")]." *Id.* The 2004 MOA took retroactive effect on July 1, 2001 and had no expiration date. *Id.*

The 2000 MOU modified the terms of the collective bargaining agreement—the Industry Wide Agreement ("IWA")—between the Hotel Workers Union and the Hotel Association of New York City ("HANYC"). *See id.* at *2. The Card Count/Neutrality provision of the 2000 MOU was incorporated into the 2001 IWA as Addendum IV, and it sets forth the procedure for the Hotel Workers Union to try to organize the employees of a hotel to which the Hotel Workers Union does not have representational rights. *See id.* at *2; Addendum IV, Declaration of Paul Rosenberg ("Rosenberg Decl.") Ex. 1 (Dkt. 7-1). Addendum IV also includes an arbitration clause, which provides that the Impartial Chairperson ("IC") "will resolve any and all disputes of any kind whatsoever arising out of this Agreement, or concerning the meaning or interpretation of any and all matters discussed herein." Addendum IV at 111.

In 2007, the Hotel Workers Union sought to organize Chelsea's hotel pursuant to the Card Count/Neutrality provision. *Chelsea Grand LLC v. N.Y. Hotel & Motel Trades Council, AFC-CIO*, 629 F. App'x 152, 153 (2d Cir. 2015) ("*Chelsea I*"). Chelsea resisted, and the Hotel

---

[1] Chelsea refers to Interstate Management Company, LLC and Interstate Hotels & Resorts, Inc. collectively as Interstate.

Workers Union commenced an arbitration proceeding against Chelsea before the OIC. *Id.* at 153. The IC issued two awards finding Chelsea in violation of its obligations under the 2004 MOA, reasoning that Chelsea was bound to the 2004 MOA because it was a joint employer and principal to Interstate. *Id.*

Chelsea then challenged the arbitral proceedings pursuant to New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") Article 75. *Chelsea I*, 2014 WL 4813028, at *1. The action was removed to federal court, and this Court confirmed the arbitral awards, finding Chelsea bound to Interstate's commitments under theories of joint employer and apparent agency.[2] *Chelsea I*, 629 F. App'x at 154. Chelsea appealed, and the Second Circuit affirmed, explaining that the Card Check/Neutrality provision of the 2001 IWA was applicable to Chelsea Grand through the 2004 MOA. *Id.* at 155.

**II.     2008 Award**

While *Chelsea I* was pending, the IC conducted a card count and certified that a majority of eligible employees had designated the Hotel Workers Union as their collective bargaining representative. Hotel Workers Union Answer & Countercl. Ex. B (Dkt. 16-2). The Hotel Workers Union then made additional arbitration demands on Chelsea under Addendum IV, alleging unfair labor practices. Compl. (Dkt. 1) ¶ 21; Hotel Workers Union Answer & Countercl. (Dkt. 16) ¶ 21. After 11 days of hearings, supplemented by post-hearing and reply briefs, Chairperson Ira Drogin issued an award on April 14, 2008 ("2008 Award"). Compl. ¶ 24; Hotel Workers Union Answer & Countercl. ¶¶ 24, 74; Chelsea Answer (Dkt. 23) ¶ 74.

---

[2] Chelsea also commenced an action against Interstate for breach of contract and negligent and intentional breach of fiduciary duty. Chelsea contended that Interstate had allowed the Hotel Workers Union to be recognized against Chelsea's wishes and instruction. The action was commenced in the Eastern District of Virginia, and was transferred here to the Southern District of New York. *See Chelsea Grand, LLC v. Interstate Hotels & Resorts, Inc.*, 09 Civ. 924 (PAC) (S.D.N.Y.).

Chairperson Drogin found in favor of the Hotel Workers Union with respect to certain unfair labor practice allegations, and against the Hotel Workers Union with respect to others ("2008 Award"). Compl. ¶ 24; Hotel Workers Union Answer & Countercl. ¶ 24.

To remedy the effects of Chelsea's unlawful conduct, Chairperson Drogin directed Chelsea, among other things, to pay applicable employees "the minimum hourly wage rates, and fringe benefits . . . contained in the Collective Bargaining Agreement between the Union and the Wingate Hotel, until the sooner of the execution of a Collective Bargaining Agreement between the Hotel and the Union, or the expiration date of the aforementioned Wingate Hotel Collective Bargaining Agreement." 2008 Award, Rosenberg Decl. Ex. 2 (Dkt. 7-2, 7-3) at 57–58. He also directed that Chelsea would "be bound by all of the other provisions of the [2001 IWA]" for the same duration of time. Id. at 58. With respect to these remedies, Chairperson Drogin "retain[ed] jurisdiction should there arise any dispute with regard to application, entitlement, or the amount due bargaining unit employees." Id.

The 2008 Award was neither vacated nor confirmed.

### III. 2016 Award

On December 7, 2015, the Hotel Workers Union tried to negotiate with Chelsea for a collective bargaining agreement, and served a Request for Information ("RFI") on Chelsea. Hotel Workers Union Answer & Countercl. ¶ 82; Chelsea Answer ¶ 82. Chelsea provided some but not all information requested in the RFI. Compl. ¶ 36; Hotel Workers Union Answer & Countercl. ¶ 83.

On January 11, 2016, the Hotel Workers demanded arbitration regarding (1) Chelsea's "[f]ailure and refusal to produce documents and information requested by the Union," and (2) Chelsea's failure and refusal "to honor obligations under [the 2008 Award], including but not

limited to employee wages and benefits; instituting unilateral changes." Rosenberg Decl. Ex. 13 (Dkt. 7-14). A hearing was held on February 24, 2016 before the OIC, and Chairperson Drogin issued an award relating to these two issues on May 10, 2016 ("2016 Award"). Hotel Workers Union Answer & Countercl. ¶ 87, 91; Chelsea Answer ¶ 87, 91.

### A. Request for Information

In the 2016 Award, Chairperson Drogin noted that Chelsea claimed "employee privacy" at the February 24, 2016 hearing as a reason for its refusal to provide the employee contact information requested by the Hotel Workers Union in its RFI. 2016 Award, Compl. Ex. 1 (Dkt. 1-1), at 3–4. Chairperson Drogin found Chelsea's argument to "border[] on being frivolous," and stated in the 2016 Award that he ruled orally at the February 24, 2016 hearing "that such information was to be provided to the Union." *Id.* Chairperson Drogin also rejected in the 2016 Award Chelsea's argument that the requested information was not relevant. *Id.* at 4. Because Chelsea had not provided the requested information after the February 24, 2016 hearing, Chairperson Drogin directed Chelsea to pay the Hotel Workers Union $2,698,000 in punitive damages. *Id.* at 11. Additionally, he directed Chelsea to pay $35,500 for each day that it failed to comply with the RFI. *Id.* at 11.

### B. 2008 Award

The Hotel Workers Union submitted to the IC the issue of what monetary amounts Chelsea owed to five categories of employees under the 2008 Award, as well as what the status quo ante was for wages and benefits when collective bargaining recommenced. *Id.* at 2. Chelsea submitted the issue of whether the 2008 Award remained enforceable. *Id.* Chairperson Drogin concluded that the 2008 Award was "viable and enforceable and the Union [was] entitled to all of the relief it [had] requested." *Id.* at 11. He directed a hearing to be held to determine the

amounts due to various employees and found "that the status quo ante for wages and fringe benefits for . . . when the parties recommenced collective bargaining . . . is the current terms and conditions contained in the current Wingate Collective Bargaining Agreement." *Id.*

## DISCUSSION

### I. Confirmation of the Arbitral Award

Under "the N.Y. C.P.L.R., a court must confirm an award upon timely motion unless it is vacated, modified, or corrected." *Cardinale v. 267 Sixth Street LLC*, 13 Civ. 4845 (JFK), 2014 WL 4799691, at *10 (S.D.N.Y. Sept. 26, 2014) (citing *Blumenkopf v. Proskauer Rose LLP*, 943 N.Y.S.2d 885, 886 (1st Dep't 2012)). Chelsea argues for vacation of the 2016 Award because it constitutes the IC's "own brand of industrial justice" and manifestly disregards the law by (1) ignoring the statute of limitations for enforcement of arbitral awards; (2) providing remedies outside the scope of the IC's authority; and (3) awarding damages that the Hotel Workers Union did not request.

#### A. Statute of Limitations

Review of an arbitral award for manifest disregard of the law is "severely limited." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). "A party seeking to vacate an arbitration award on the basis of manifest disregard of the law must satisfy a two-pronged test, proving that: (1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110–11 (2d Cir. 2006). "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Wallace*, 378 F.3d at 190 (internal quotation marks and emphasis omitted).

Chelsea contends that because the Hotel Workers Union did not confirm the 2008 Award within the one-year period provided for by N.Y. C.P.L.R. § 7510, it was "barred by principles of *res judicata* from bringing a subsequent arbitration based on the claims that were at issue in that award." Chelsea Br. (Dkt. 8) at 11. Chelsea relies on *Protocom Devices, Inc. v. Figueroa*, where the First Department affirmed a permanent stay of arbitration proceedings that sought to address a matter already decided in a prior arbitration. 173 A.D.2d 177, 178 (1st Dep't 1991). The *Protocom* respondent had obtained an award for approximately $17,000, but failed to confirm it within one year. The respondent then sought to commence a second arbitration based on the same claim. The First Department affirmed the stay of arbitration, holding that "an arbitration award rendered in compliance with all legal requirements is a complete, final and binding determination of a controversy which may not be disturbed, unless the statutory grounds for doing so exist." *Id.* (internal quotation marks omitted). Chelsea's argument, then, is that the IC manifestly disregarded the law when it issued the 2016 Award because the 2016 Award was a resubmission of a dispute that was already the subject of a final and binding determination (*i.e.*, the unconfirmed 2008 Award).

The Hotel Workers Union cites *Hotel Greystone Corp. v. N.Y. Hotel & Motel Trades Union, AFL-CIO* to support its argument that the IC is not necessarily bound by the N.Y. C.P.L.R.'s time limitation on confirmation. 902 F. Supp. 482 (S.D.N.Y. 1995). In *Hotel Greystone*, the IC issued an award, and the Hotel Workers Union later requested reconsideration. After the IC granted the Hotel Workers Union's request, the petitioner filed a petition for a stay of arbitration, contending that the Hotel Workers Union's request was untimely under the N.Y. C.P.L.R. The court determined that the parties had contracted around the limitations of the N.Y. C.P.L.R.; but noted that, even absent that, it was not clear that the time limitations of the N.Y.

7

C.P.L.R. would apply to applications to the IC. *Id.* at 485–86 & n.3. The Hotel Workers Union contends that this shows that the IC did not manifestly disregard any explicit, well defined, and clearly applicable law that the N.Y. C.P.L.R.'s time limitations apply to proceedings before the IC. The Court agrees.

Even assuming that Chelsea is correct that the 2008 Award was a final and binding determination and that it was subject to the N.Y. C.P.L.R.'s one-year limitations period for confirmation, Chelsea still fails to demonstrate that the IC ignored a law that was "well defined, explicit, and clearly applicable to the case." The 2008 Award set forth remedies for certain unfair labor practices, and the IC expressly retained jurisdiction to determine the application of the award or the amounts due to applicable employees. 2008 Award at 57–58. The 2016 Award does not re-determine the conclusions of the 2008 Award regarding Chelsea's unfair labor practices; instead, it sets forth how to apply the remedies in the 2008 Award. 2016 Award at 7–8, 11–12.

*Protocom* therefore is distinguishable because the amount to be paid was explicitly provided for in the original award, and there was no allegation that the arbitrator retained jurisdiction. Chelsea cites no case holding that an arbitrator cannot issue a subsequent award to determine how to apply the remedies of a prior unconfirmed award, if the time for confirmation of the prior award has expired. Because the IC's resolution of the dispute "required application of an unclear rule of law to a complex factual situation," *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1217 (2d Cir. 2002) (internal quotation marks omitted), the Court cannot conclude that the IC manifestly disregarded the law in issuing the 2016 Award.

Chelsea also argues that the statute of limitations for breach of contract provides a basis for finding that the IC manifestly disregarded the law. Chelsea rests its argument on the Second

Circuit's statement in *Florasynth, Inc. v. Pickholz* that "[a]n unconfirmed award is a contract right that may be used as the basis for a cause of action." 750 F.2d 171, 176 (2d Cir. 1984). Even though *Florasynth* was not a case involving a cause of action based on an unconfirmed award (the successful party to the arbitration timely sought confirmation of the award), Chelsea urges that the appropriate statute of limitations for claims based on an unconfirmed award is the same as the statute of limitations under New York law for breach of contract. Chelsea reasons that because the statute of limitations for a breach of contract claim under New York law is six years, N.Y. C.P.L.R. § 213, and because Chelsea's alleged non-compliance with the 2008 Award occurred in 2008, the Hotel Workers Union had only until 2014 to try to enforce the unconfirmed 2008 Award. But Chelsea does not cite any case where a court in fact applied a six-year statute of limitations—or indeed any statute of limitations—for a claim based on a party's failure to comply with an unconfirmed arbitral award. As such, there is no basis to conclude that the IC ignored a "well defined, explicit, and clearly applicable" law.

Finally, Chelsea argues that the six-month statute of limitations for unfair labor practice claims has run on the claims that the 2008 Award addressed, and so the IC manifestly disregarded the law by re-litigating those claims in the 2016 Award. As discussed, however, the 2016 Award does not re-litigate those claims.

### B. Permissible Remedies

An arbitrator's decision "receives limited review: as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 98 (2d Cir. 1991) (internal quotation marks omitted). "An arbitrator's award must draw its essence from the

collective bargaining agreement, and the arbitrator is not free merely to dispense his own brand of industrial justice." *Id.* (internal quotation marks and alterations omitted). "Where it is clear that the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference), the arbitral award cannot stand." *Id.* (internal quotation marks and emphasis omitted). But the award should be enforced "if there is a *barely colorable justification* for the outcome reached." *Wallace*, 378 F.3d at 190.

Addendum IV empowers the IC

> to issue such remedial orders as are consistent with applicable NLRB standards and necessary during and after the pendency of the Union's organization drive to ensure the maintenance of the neutral environment and/or to penalize the Hotel or the Union for violating their obligations hereunder, including an order to bargain in accordance with applicable NLRB standards, and/or monetary or punitive damages to either party.

Addendum IV at 114. The IC has interpreted his power under Addendum IV as allowing him to (1) issue a remedial order consistent with applicable NLRB standards; and (2) award monetary or punitive damages to either party. *See* 2008 Award at 54. Chelsea submits that imposing contractual terms from a collective bargaining agreement that it did not agree to is outside the IC's authority and constitutes the IC's own brand of industrial justice because it (1) is not "consistent with applicable NLRB standards," and (2) does not amount to "punitive damages to either party." The Court only addresses Chelsea's first argument.[3]

The NLRB cannot "compel a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement." *H. K. Porter Co. v. N.L.R.B.*, 397 U.S. 99, 102

---

[3] In assessing the validity of Chelsea's argument, the Court confines its review to the directives of the 2016 Award. Although the 2016 Award states that the 2008 Award remains enforceable, the 2016 Award only enforces certain of the 2008 Award's monetary directives. The Court does not address whether an award enforcing all directives in the 2008 Award could be confirmed.

(1970). Chelsea argues that the 2016 Award is a remedial order inconsistent with NLRB standards because it does what *H. K. Porter* proscribes by enforcing against it the monetary contractual provisions from the Wingate Hotel Collective Bargaining Agreement. That is not the case, however.

In *H. K. Porter*, the United Steelworkers Union was certified as the bargaining agent for certain employees at H. K. Porter Co. The union wanted H. K. Porter Co. to agree to deduct union dues from employees' wages. To frustrate the making of a collective bargaining agreement, the company refused. The NLRB mandated granting a deduction from wage payments; but the Supreme Court held that the NLRB did not have the power to issue such an order.

The 2016 Award differs from the order in *H. K. Porter*, however; Chelsea is not bound to any terms in a fixed, bilateral sense. Chelsea can unilaterally end the application of the terms by negotiating a collective bargaining agreement with the Hotel Workers Union. The facts here are more aligned with *N.L.R.B. v. Staten Island Hotel Ltd. Partnership*, where the Second Circuit upheld an NLRB remedial order requiring a hotel to apply terms from an analogous contract, until the hotel negotiated in good faith, to agreement or to impasse. 101 F.3d 858, 862 (2d Cir. 1996).

In *Staten Island*, a company acquired a hotel whose employees were previously represented by a union. The company hired some former employees, but not enough to constitute a majority. The NLRB determined that the hotel engaged in an unfair labor practice when it chose not to hire former employees based on the hotel's antiunion animus. As a result, the NLRB ordered the company to pay former employees at the rates they received prior to the company's acquisition, and the Second Circuit granted the NLRB's petition for enforcement.

11

As in *Staten Island*, the monetary directives of the IC's awards are temporally limited, and, per the 2008 Award, are designed to remedy Chelsea's non-compliance. Any other ruling would permit Chelsea to benefit from its intransigence at the expense of wronged workers. The Court determines that the IC has not imposed his own "brand of industrial justice" in issuing the 2016 Award.

### C. Remedies Not Requested

Chelsea asserts that the IC improperly awarded nearly $3,000,000 in punitive damages for Chelsea's failure to provide responsive information to the Hotel Workers Union's RFI because (1) the Hotel Workers Union did not request such relief, and (2) the 2016 Award impermissibly imposes a penalty for pre-violation conduct.

With respect to its first argument, Chelsea notes that the Hotel Workers Union requested in its statement of issues that the IC determine "what shall be the remedy," if the IC found that Chelsea's failure to provide information pursuant to the RFI violated the National Labor Relations Act ("NLRA") and Addendum IV. 2016 Award at 2. Then, in its post-hearing brief, the Hotel Workers Union requested that the IC (1) "order that the Hotel fully comply with the RFI," and (2) impose "a daily penalty of $35,550 for each day the Hotel fails and refuses to provide the Union with the requested information upon being ordered to do so by the Impartial Chairman." Rosenberg Decl. Ex. 14 (Dkt. 7-15) at 15. This, Chelsea contends, shows that the Hotel Workers Union did not seek penalties for any non-compliance prior to the IC's issuance of the 2016 Award. But "there is no . . . *per se* rule that it is beyond the authority of the arbitrators to issue a remedy directed to an issue squarely before them unless it was requested by one of the parties." *See Harper Ins. Ltd v. Century Indem. Co.*, 819 F. Supp. 2d 270, 277 (S.D.N.Y. 2011). Chelsea offers no reason, in light of the broad remedial authority conferred by Addendum IV, to

conclude that the IC exceeded his authority in fashioning a remedy not specifically requested by the Hotel Workers Union. This argument is therefore unavailing.

With respect to its second argument, Chelsea contends that the IC did not order production of materials at the February 2016 hearing, so the IC exceeded his authority by purportedly remedying a violation that had not yet occurred. This argument is in direct conflict with the IC's factual determination in the 2016 Award. The IC explained in the 2016 Award that "[he] ruled orally at the hearing that such information was to be provided to the Union by the Hotel." 2016 Award at 3. "Under the manifest disregard standard, . . . the governing law must clearly apply to the facts of the case, *as those facts have been determined by the arbitrator*." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 213 (2d Cir. 2002). There is no basis here for the Court to reject the IC's factual determination regarding his oral order during the February 2016 hearing.

## II. Declaratory Judgment Action

Chelsea seeks a declaratory judgment that it "is not bound to any labor agreement with the Union, including without limitation that it has no ongoing obligation under the 2004 MOA to arbitrate disputes with the Union before the IC." Compl. ¶ 52. The Hotel Workers Union moves to dismiss Chelsea's declaratory judgment action, arguing that (1) there is no independent basis for subject matter jurisdiction; (2) there is no case of actual controversy; (3) the Court should exercise its discretion to dismiss the claim; and (4) the claim is time-barred. The Court agrees that there is no case of actual controversy; and so the Court need not address the balance of the Hotel Workers Union's arguments.

A district court does not have subject matter jurisdiction over a declaratory judgment action if there is no "case of actual controversy." *See* 28 U.S.C. § 2201(a). The party seeking

declaratory relief "bears the burden of proving the Court has jurisdiction." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "Accordingly, a touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406–07 (S.D.N.Y. 2002).

The fact that "liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992). Where liability is contingent, a court should focus on "the practical likelihood that the contingencies will occur." *Id.* "[U]nder the 'practical likelihood' test . . . , a court must assess as a matter of fact how likely it is that the contingent event upon which the controversy rests will occur." *U.S. Dept. of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 363 (S.D.N.Y. 2012).

Chelsea urges that the issue of whether it is bound by any labor agreement to arbitrate disputes with the Hotel Workers Union before the OIC presents a case of actual controversy. Chelsea makes this argument notwithstanding that it has not alleged that the Hotel Workers Union has indicated in any way its intent to initiate a new arbitration. All Chelsea argues is that the Hotel Workers Union has previously initiated arbitration proceedings before the OIC. From

there, Chelsea leaps to the unsupported conclusion that "the Union believes Chelsea Grand has violated obligations and is eager to arbitrate those disputes." Chelsea Opp'n (Dkt. 34) at 12. Stripped to its essentials, Chelsea portrays its apprehension that the Hotel Workers Union will seek at some unspecified time, for some unspecified reason to initiate an arbitration proceeding before the OIC as an actual controversy. *See id.* at 13 ("It is enough that Chelsea Grand has plausibly alleged—and the Union has confirmed—that (1) it intends to arbitrate no future claims with the Union, and (2) there is a practical likelihood that such claims are forthcoming very soon."). Contrary to Chelsea's assertions, this is simply insufficient.

Chelsea cites a number of decisions to support its argument that "courts routinely find live, substantial controversies where parties are at loggerheads as to the validity and scope of their respective contractual obligations." *Id.* at 11. But in all of those decisions, a party to the relevant agreement had indicated, prior to the claim being brought, that it would take some action to enforce or potentially breach the agreement. *See Am. Mach. & Metals, Inc. v. De Bothezat Impeller Co.*, 166 F.2d 535, 535–36 (2d Cir. 1948) (plaintiff indicated desire and intent to terminate agreement; defendant indicated it might sue); *Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242, 245 (S.D.N.Y. 2009) (defendant demanded rescission of agreement); *In re Metiom, Inc.*, 01 Civ. 12840 (RLB), 2002 WL 433588, at *3 (S.D.N.Y. Feb. 25, 2002) (party to agreement denied liability under the agreement); *Gilbert, Segall & Young v. Bank of Montreal*, 785 F. Supp. 453, 456 (S.D.N.Y. 1992) (party indicated it might default under agreement). Here, in contrast, Chelsea points to nothing indicating that there is any likelihood that (1) there will be a dispute between the Hotel Workers Union and Chelsea subject to a labor agreement arbitration provision that (2) the Hotel Workers Union will then try to arbitrate before the OIC. Thus, Chelsea has failed to allege a controversy "of sufficient immediacy and reality to warrant the

15

issuance of a declaratory judgment."

### III. Attorney's Fees

The Hotel Workers Union requests attorney's fees and costs associated with confirmation of the 2016 Award. When a challenger to an arbitration award "refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be award." *Mandell v. Reeve*, 10 Civ. 6530 (RJS), 10 Civ. 7389 (RJS), 2011 WL 4585248, at *12 (S.D.N.Y. Oct. 4, 2011). While Chelsea's arguments against confirmation are ultimately unavailing, the Court does not find that Chelsea acted without justification in raising them.

### CONCLUSION

Chelsea's petition to vacate the 2016 Award is DENIED. The Hotel Workers Union's petition to confirm the 2016 Award, and its motion to dismiss the declaratory judgment action are GRANTED. The Hotel Workers Union shall submit a proposed Judgment by April 5, 2017, on five days' notice to Chelsea. The Clerk of Court is directed to close the motions at Docket 6, 24, and 27.

Dated: New York, New York
March 23, 2017

SO ORDERED

/s/ Paul A. Crotty
PAUL A. CROTTY
United States District Judge